## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

BARBARA BURROWS,

      Plaintiff,

v.                                      Case No:  5:14-cv-197-Oc-30PRL

THE COLLEGE OF CENTRAL
FLORIDA,

      Defendant.

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Counts II and III of Plaintiff's Complaint (Doc. 5), Plaintiff's response in opposition thereto (Doc. 11), Defendant's reply (Doc. 16), and Plaintiff's response to Defendant's reply (Doc. 21). The Court, having reviewed the pleadings and being otherwise fully advised in the premises, concludes that the motion should be granted in part and denied in part.

## BACKGROUND

Plaintiff Barbara Burrows is a former employee of Defendant.  Following her termination of employment with Defendant, Plaintiff initiated this action in Fifth Judicial Circuit in and for Marion County, Florida, on November 22, 2013, asserting the following claims against Defendant: (1) gender discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2000e-17, and the Florida Civil Rights Act, Fla. Stat. §§ 760.01-.11 ("FCRA"); (2) religious discrimination under Title VII and the FCRA; (3)

martial status discrimination under the FCRA; (4) gender stereotype discrimination under Title VII; and (5) retaliation under Title VII and the FCRA. (Doc. 2). On April 1, 2014, Defendant removed the action to this Court. (Doc. 1).

In July 2008, Defendant hired Plaintiff as the Vice President for Instructional Affairs. (Doc. 2 at 3). When Plaintiff was hired, Defendant promulgated an equal employment opportunity statement that set forth Defendant's policy to provide equal employment regardless of race, color, religion, gender, sexual orientation, national origin, age, disability, marital status, amnesty, or status as a covered veteran. (*Id.*). After Plaintiff began working for Defendant, she legally married a woman in the State of Iowa. (*Id.*). While in the position of Vice President for Instructional Affairs, Plaintiff received above-average annual evaluations. (*Id.* at 4).

In August 2010, Defendant revised its equal employment opportunity statement to remove the prohibition against discrimination based on sexual orientation.[1] (*Id.*). Plaintiff was forced to resign from her position as Vice President for Instructional Affairs and she accepted a transfer to a teaching position shortly thereafter. (*Id.* at 4-5). Plaintiff alleges that she was not provided the appropriate prorated salary for her teaching position as delineated in Defendant's salary schedule nor was her salary equivalent to that of similarly situated male individuals, i.e., former male administrators who transferred to teaching positions. (*Id.* at 5).

---

[1]It is not entirely clear from the complaint whether this revision was made before or after Plaintiff's marriage to another woman.

Plaintiff filed a claim of discrimination with the Florida Commission on Human Relations ("FCHR") and the United States Equal Employment Opportunity Commission ("EEOC") alleging that her demotion was due to gender, sexual orientation, marital status, and religion.  (*Id.*).  On April 30, 2013, the FCHR issued a "no cause" determination in favor of Defendant.  (*Id.*).  Approximately one month later, Defendant terminated Plaintiff's employment.  (*Id.*).  On August 26, 2013, the EEOC adopted the findings of the FCHR and issued a "dismissal and notice of rights."  (Doc. 11 at 3).

## DISCUSSION

### I.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### II.  Analysis

#### A.  Count II—Religious Discrimination

Defendant contends that Plaintiff has failed to allege a prima facie case of religious discrimination under the FCRA and Title VII because Plaintiff has not established that she was treated differently than other employees because of her religious beliefs.  (Doc. 5 at

3

3-5).  Instead, Defendant alleges that Plaintiff is attempting to use her claim for religious discrimination as a subterfuge to assert a claim for discrimination based on sexual orientation.  (*Id.*).

Pursuant to Title VII, it is "unlawful . . . for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).[2] Title VII religious discrimination claims come in two forms: (1) "reasonable accommodations" claims, and (2) disparate treatment claims.  A disparate treatment claim is based on an allegation that an employer took an adverse action against an employee on the basis on religion.

Plaintiff alleges that Defendant took an adverse employment action, i.e., demotion and eventually termination of Plaintiff's employment, on the basis of Defendant's religious beliefs.  (Doc. 2 at 9-11).  Generally, in order to establish a claim of disparate treatment a

---

[2]Similarly, the FCRA, which is modeled after Title VII, provides, "It is an unlawful employment practice for an employer . . . [t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."  Fla. Stat. § 760.10(1)(a); *see also* Fla. Stat. § 760.01(2) ("The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status.").  Because federal law interpreting Title VII applies to the FCRA under Florida law, the Court only discusses federal law pertinent to Title VII, but notes that the law applies equally to Plaintiff's claims under the FCRA.  *See Albra v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007) (holding that federal law interpreting Title VII is applicable in construing the FCRA); *City of Hollywood v. Hogan*, 986 So. 2d 634, 641 (Fla. 4th DCA 2008) (holding that "[f]ederal case law interpreting Title VII . . . applies to cases arising under the FCRA").

plaintiff must show that (1) she is a member of a protected class, in this case, a religion; (2) she was subjected to an adverse employment action; (3) the defendant treated her differently than members of a different religion; and (4) the plaintiff was qualified to perform the job.  *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

However, this general standard does not fit the context of Plaintiff's allegations because she alleges that she was treated differently not on account of being a member of a particular religion or because she held certain religious beliefs but rather because she did not share the religious beliefs of her employer.  In fact, Plaintiff avers that she is not affiliated with any religion or church.  (Doc. 2 at 3).  "Title VII has been interpreted to protect against requirements of religious conformity and as such protects those who refuse to hold, as well as those who hold, specific religious beliefs." *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  In such a circumstance, the Tenth Circuit Court of Appeals has established a different, more flexible standard for establishing a prima facie case of religious discrimination which this Court finds persuasive and adopts in the absence of a pronouncement from the Eleventh Circuit on this issue.

> [I]n order to establish a prima facie case in actions where the plaintiff claims that he was discriminated against because he did not share certain religious beliefs held by his supervisors, we hold that the plaintiff must show (1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs.

*Id.* at 1038; *see also Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997) (agreeing with the standard established in *Shapolia*); *Panchoosingh v. Gen. Labor Staffing Servs., Inc.*, No. 07-80818-CIV, 2009 WL 961148, at *6 (S.D. Fla. Apr. 8, 2009) (adopting the standard established in *Shapolia* where an employee alleged that he was fired because he did not share or follow his employer's religious beliefs).

Plaintiff alleged that she was first demoted and then terminated from employment with Defendant—an adverse employment action.  (Doc. 2 at 4-5).  She also alleged that at the time she was demoted and terminated her job performance was satisfactory.  (*Id.* at 4, 6).  Plaintiff contends that she was demoted and terminated because she did not hold the same religious beliefs as her employer and supervisors, who believed that "lesbian, gay, bisexual, and transgender individuals (LGBT) are sinners and live in a manner inconsistent with 'good Christian values.'"  (*Id.* at 9).

In *Prowel v. Wise Business Forms, Inc.*, the Third Circuit considered whether a claim for religious harassment could survive a motion for summary judgment where the Plaintiff alleged that he was harassed for failing to conform to his employer's religious belief that homosexuality was "contrary to be being a good Christian."  579 F.3d 285, 292-93 (3d Cir. 2009).  The Third Circuit found,

> [The plaintiff's] identification of this single "religious" belief leads ineluctably to the conclusion that he was harassed not "because of religion," but because of his sexual orientation.  Given Congress's repeated rejection of legislation that would have extended Title VII to cover sexual orientation . . . we cannot except [plaintiff's] *de facto* invitation to hold that he was discriminated against "because of religion" merely by virtue of his homosexuality.

*Id.* at 293 (internal citations omitted).  Because it found that the plaintiff's religious harassment claim was based solely on his status as a gay man, the Third Circuit concluded that his claim for religious discrimination was not cognizable under Title VII.  *Id.*; *but see Terveer v. Billington*, No. 12-1290(CKK), 2014 WL 1280301, at *10-11 (D. D.C. Mar. 31, 2014) (distinguishing *Prowel* and noting that where an employee's personal activities or status, e.g., being a divorcee or homosexual, failed to conform to the employer's religious beliefs and the employee was subjected to religious harassment on account of those personal activities or status, that employee could state a claim for religious harassment).

Here, Plaintiff's allegations are quite similar to the allegations made by the plaintiff in *Prowel*.  The sole religious belief to which Plaintiff alleges that she failed to conform related to her sexual orientation.  Plaintiff has alleged no other instances of religious discrimination.  Although the Supreme Court and the Eleventh Circuit have not specifically addressed this issue, courts in this circuit and across the country have consistently held that Title VII does not apply to discrimination claims based on sexual orientation.  *See, e.g.*, *Anderson v. Napolitano*, No. 09-60744-CIV, 2010 WL 431898, at *4 (S.D. Fla. Feb. 8, 2010) ("The law is clear that Title VII does not prohibit discrimination based on sexual orientation."); *Mowery v. Escambia Cnty. Utils. Auth.*, No. 3:04CV382-RS-EMT, 2006 WL 327965, at *9 (N.D. Fla. Feb. 10, 2006) ("[C]ase law throughout the circuits consistently holds that Title VII provides no protection for discrimination based on sexual orientation.").

To the extent Plaintiff's claim for religious discrimination is based solely on Defendant's alleged religious disapproval of her sexual orientation, Plaintiff has failed to

allege a claim for religious discrimination.   Accordingly, Plaintiff's claim for religious discrimination under Title VII and the FCRA should be dismissed.

### B.  Count III—Marital Status Discrimination

Next, Defendant contends that Plaintiff has failed as a matter of law to allege a claim for marital status discrimination under the FCRA.  (Doc. 5 at 5-6).  Namely, Defendant argues that Plaintiff's claim fails because Florida does not recognize same-sex marriages. (*Id.*)   In response, Plaintiff counters that Florida's statute and constitutional provision prohibiting recognition of same-sex marriages are unconstitutional.  (Doc. 11 at 7-10).

While marital status is included as a protected class under the FCRA, *see* Fla. Stat. § 760.10(a)(1),  Florida Statute § 741.212 specifically provides,

> (1) Marriages between persons of the same sex entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, or relationships between persons of the same sex which are treated as marriages in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, *are not recognized for any purpose in this state*.

> (2) The state, its agencies, and its political subdivisions may not give effect to any public act, record, or judicial proceeding of any state, territory, possession, or tribe of the United States or of any other jurisdiction, either domestic or foreign, or any other place or location respecting either a marriage or relationship not recognized under subsection (1) or a claim arising from such a marriage or relationship.

> (3) For purposes of interpreting any state statute or rule, the term "marriage" means only a legal union between one man and one woman as husband and wife, and the term "spouse" applies only to a member of such a union.

(Emphasis added.).  Similarly, Article I, § 27, of the Florida Constitution defines marriage as "the legal union of only one man and one woman as husband and wife, no other legal

union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized."

After Defendant filed its motion to dismiss, the Northern District of Florida issued an opinion in *Brenner v. Scott*, 999 F. Supp. 2d 1278, 1281-82 (N.D. Fla. 2014), declaring that marriage is a fundamental right under the Fourteenth Amendment's Due Process and Equal Protection Clauses, that Florida's same-sex marriage provisions are subject to strict scrutiny, and that, when reviewed under the strict-scrutiny standard, the provisions are unconstitutional. The *Brenner* decision is currently pending appeal before the Eleventh Circuit Court of Appeals. Thus, the Court concludes that it is appropriate at this time to allow Plaintiff's claim for marital discrimination under the FCRA to proceed beyond the motion to dismiss stage. The Court will revisit the issue, if necessary, upon summary judgment.

## CONCLUSION

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1.      Defendant's Motion to Dismiss Counts II and III of Plaintiff's Complaint (Doc. 5) is GRANTED in part and DENIED in part.

2.      Count II of the complaint is DISMISSED.

DONE AND ORDERED at Tampa, Florida on the 17th day of December, 2014.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record